IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

STANLEY MARTIN COMPANIES, INC.)
                                )
     Plaintiff,        )
                                )
       v.           )     1:06cv1035 (JCC)
                                )
OHIO CASUALTY GROUP,     )
                                )
     Defendant.        )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment.  For the reasons stated below, the Court will grant Defendant's motion and deny Plaintiff's motion.

**I. Background**

This action arises from an umbrella insurance contract between Stanley Martin Companies, Inc. ("Plaintiff") and Ohio Casualty Insurance Co.,[1] f/k/a American National Fire Insurance Company ("Defendant").  The policy at issue provided coverage for property damage or injury exceeding the coverage provided by

---

[1] In their Complaint, as well as in their instant motion, Plaintiff refers to Defendant as "Ohio Casualty Group." Defendant has indicated in their briefs on these motions and in oral argument before this Court on September 28, 2007 that Defendant's proper name is "Ohio Casualty Insurance Company." Plaintiff did not object to this correction, and the Court will now refer to Defendant as Ohio Casualty Insurance Co.

Plaintiff's primary general commercial liability insurance
policy.  Plaintiff has filed an action against Defendant for
breach of contract and declaratory relief, seeking
indemnification for costs incurred to remediate mold damage to a
construction project covered by the policy, as well as costs and
attorneys' fees.

Plaintiff is a residential builder headquartered in
Reston, VA.  During 1999 and 2000, Plaintiff was general
contractor for the construction of twenty-four duplex townhouses
in a development known as Quince Orchard Park in Gaithersburg,
MD.  Plaintiff subcontracted with Shoffner Industries, Inc.
("Shoffner") to supply wood trusses for use in the construction
of the townhouses.  Pursuant to the subcontract, Shoffner
warranted that the trusses were free of mold and agreed to
indemnify Plaintiff for any liability, damages, or costs that
arose from negligence or default under the agreement.

For the period April 1, 2000 to April 1, 2001, One
Beacon Insurance Company, f/k/a CGU Insurance Company ("One
Beacon"), issued Plaintiff a primary general commercial liability
policy (the "One Beacon policy") with a limit of $1,000,000 per
occurrence.  Under the terms of the agreement, One Beacon was
obligated to pay for sums incurred due to bodily injury or
property damage caused by an "occurrence," defined under the
agreement as "an accident, including continuous or repeated

2

exposure to substantially the same general harmful conditions." Ex. C to Pl.'s Mot. for Partial Summ. J.  For that same period, Defendant issued Plaintiff a commercial umbrella policy (the "Ohio Casualty policy") that extended coverage to sums in excess of the retained limit in the One Beacon policy for property damage or injury caused by an occurrence.  The Ohio Casualty policy stated:

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

Ex. 37 to Def.'s Mot. for Summ. J. at OC0008.  For the period April 1, 1999 to April 1, 2000, Plaintiff's primary insurer was Manufacturers Alliance Insurance Company ("PMA"), and the contract terms with PMA were the same as those with One Beacon. Plaintiff's excess coverage during that period was covered by an umbrella policy issued by Federal Insurance Company ("Federal"), and the contract terms with Federal were the same as those with Defendant.[2]

---

[2] While Defendant also issued Plaintiff an umbrella policy for the period April 1, 2001 to June 1, 2001, Plaintiff is not making a claim for coverage under that policy.  *See* Pl.'s Reply to Def.'s Opp'n at 3 n.3.

As the townhouses were built and sold during 1999, homeowners began reporting mold growing on the wood trusses and gypsum board "fire" walls and demanded that Plaintiff repair the problem.  Complaints by homeowners to the City of Gaithersburg led to an investigation by Patuxent Environmental Group, Inc. ("Patuxent"), who designed mold remediation protocols for each home.  Plaintiff provided PMA, One Beacon, Federal, and Defendant ("Insurers") with notice of the homeowner claims.  With the knowledge and consent of the Insurers, in early 2001 Plaintiff hired a remediation contractor to undertake a comprehensive mold remediation effort.  These efforts ultimately cost Plaintiff over $1.7 million.

Despite these comprehensive efforts, in April and May 2002 fourteen of the twenty-four homeowners filed complaints against Plaintiff in the Circuit Court for Montgomery County, Maryland, for damages due to the continuing effects of mold growth.  Both Defendant and One Beacon were notified of these lawsuits on May 30, 2002.  After Plaintiff completed the remediation process, the homeowners chose to settle, and all claims were resolved by January 2004.

Primary insurers One Beacon and PMA each paid half of Plaintiff's defense costs in connection with the fourteen homeowner lawsuits, and shared costs in settling the cases. Plaintiff then made requests to One Beacon and PMA for

4

indemnification of remediation costs.  While PMA contributed $450,000, One Beacon refused to make a contribution, and on August 4, 2004, Plaintiff initiated a declaratory judgment action against them ("First Coverage Action").  Plaintiff later amended their complaint to add Federal and Defendant as defendants, seeking a declaration of coverage under each policy for the more than $1.7 million in remediation expenses.

Subsequently, in December 2004 Federal and Plaintiff agreed to settle the claim, with Federal paying $350,000 toward remediation expenses.  One month later, in January 2005, One Beacon and Plaintiff settled for $474,750, with the entire sum going toward remediation expenses.  Finally, in June 2006, in response to a lawsuit against Shoffner by Plaintiff, both parties settled, with Shoffner paying $400,000 toward remediation expenses.

Plaintiff then brought suit again, this time against Defendant alone, on September 12, 2006.  In this suit, Plaintiff alleged breach of contract by Defendant and sought a declaratory judgment finding that Defendant had breached its duty to indemnify Plaintiff for remediation costs relating to mold damage and that Defendant is obligated to contribute to those costs. Plaintiff also sought all costs and expenses, including attorneys' fees, for pursuing their action.

Defendant now moves for summary judgment on the grounds that coverage is barred because (1) Plaintiff cannot bring itself within the terms of the policy, and (2) Plaintiff's loss was expected and therefore violated the known-loss or loss-in-progress doctrines.  Defendant further claims that Plaintiff is not entitled to recover the vast majority of the money it seeks. In addition, Plaintiff now moves for partial summary judgment ordering Defendant to indemnify Plaintiff for Plaintiff's losses in excess of the $1,000,000 One Beacon policy limit.  These motions are currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The party seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the nonmoving party "must

6

set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted).

### III. Analysis

Defendant argues that Virginia law applies to this dispute, while Plaintiff claims that there is a genuine issue of fact as to whether Maryland or Virginia law applies.  The Court will address this choice of law question first, and then turn to the merits of Defendant's and Plaintiff's motions.  For the reasons below, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for partial summary judgment.

A.  The Applicable Law

A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Am. Online*, *Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 92 (4th Cir. 2003).  In Virginia, the general rule is that "a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is delivery of the policy to the insured." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635-36 (4th Cir. 2005)(quoting *Seabulk Offshore*, *Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 419 (4th Cir. 2004)); *see also Buchanan v. Doe*, 246 Va. 67, 70, 431 S.E.2d 289, 291 (Va. 1993) ("[T]he law

7

of the place where an insurance contract is written and delivered
controls issues as to its coverage."). The court in *Resources*
found that Virginia law applied where an insurance contract had
been delivered to the insured in Virginia. *Resources*, 407 F.3d
at 636. Similarly, the *Seabulk* court held that Virginia law
governed the interpretation of an insurance contract where the
contract had been delivered to the insured in Reston, Virginia.
*Seabulk*, 377 F.3d at 419. Here, the policy was issued to
Plaintiff at Plaintiff's address in Reston, Virginia. *See* Ex. 37
to Def.'s Mot for Summ. J. While the policy's producer, Brendler
Insurance Agency, is located in Rockville, Maryland, under
Virginia law a contract is not made until the policy is delivered
to the insured. *Resources*, 407 F.3d at 635.[3]

Plaintiff then argues that Defendant is precluded by
the doctrine of judicial estoppel from claiming that Virginia law
applies to this case. As support, Plaintiff cites a reference to
Maryland law in an email by Defendant's attorney, several similar
references in Defendant's claim file, and Defendant's statement
in their October 2006 Motion to Dismiss that either Virginia or
Maryland law applies to this dispute. Under the three-pronged
test of *Zinkland v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007), the

[3] Furthermore, as Defendant points out, the inclusion in the
policy of Virginia-specific endorsements, and the absence of any
Maryland-specific endorsements, is evidence that the parties
themselves intended Virginia law to govern the contract. *See*
Def.'s Reply at 3; Ex. 37 to Def.'s Mot. for Summ. J. at OC00026-
29.

party against whom the doctrine of judicial estoppel is to be applied must have, amongst other things, "intentionally misled the court to gain unfair advantage." *Id.* (quotations omitted). Plaintiff, however, offers no evidence whatsoever that Defendant's current claim about the applicability of Virginia law is being made in bad faith and with the intent to mislead the Court.[4]  Thus, the Court will find that there is no genuine issue of material fact with respect to the choice of law question and will hold that Virginia law governs this case.

B. Defendant's Motion for Summary Judgment

Defendant argues that Plaintiff cannot show that Plaintiff's remediation costs were incurred because of "property damage" caused by an "occurrence" within the meaning of the Ohio Casualty policy.  Under Virginia law, an insurance policy is a contract, and its interpretation is a matter of law for the court.  *First Am. Bank of Va. v. J.S.C. Concrete Constr. Co.*, 259 Va. 60, 66, 523 S.E.2d 496, 500 (Va. 2000).  As with other contracts, "[i]nsurance policies are to be construed according to their terms and provisions and are to be considered as a whole." *Hill v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 148, 153, 375 S.E.2d 727, 730 (Va. 1989).  Where the language used in an

---

[4] Notably, Plaintiff's judicial estoppel claim could just as easily be turned against them.  In opposing two separate motions to dismiss previously filed in litigation against Defendant, Plaintiff exclusively relied upon Virginia insurance law principles.  *See* Ex. 40 to Def.'s Mot. for Summ. J. at 8-9; Ex. A to Def.'s Reply at 10-11.

insurance policy is unambiguous, courts should give those words their ordinary and usual meaning. *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 502, 423 S.E.2d 188, 191 (Va. 1992); *United Services Auto Ass'n v. Webb*, 235 Va. 655, 657, 369 S.E.2d 196, 198 (Va. 1988).  However, "[w]here there is doubt or uncertainty and where the language of a policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer.  Where two interpretations equally fair may be made, the one which permits greater indemnity will prevail." *White Tire Dist. v. Pa. Nat'l Mut.*, 235 Va. 439, 441, 367 S.E.2d 518, 519 (Va. 1988).

While the Supreme Court of Virginia has not ruled on this precise issue, courts construing Virginia law have generally found that, for standard general liability policies like the one at issue in this case, damage caused by the defective workmanship of the insured or the insured's subcontractor and limited to the insured's work does not constitute an "occurrence" triggering coverage. *See Travelers Indem. Co. v. Miller Bldg. Corp.*, 142 Fed. Appx. 147, 149-150, WL 1690552, at **1-2 (4th Cir. July 20, 2005)(unpublished)(finding that damage to insured's work caused by a subcontractor's defective performance was not "unexpected" and therefore not an "occurrence"); *Hotel Roanoke Conference Ctr. Comm'n v. Cincinnati Ins. Co.*, 303 F. Supp. 2d 784, 786 (W.D.Va. 2004) (finding that damages resulting from the insured's

10

defective performance of a contract and limited to the insured's work were "expected" and thus not covered by a general commercial liability policy), *aff'd* 119 Fed. Appx. 451, 2005 WL 23380 (4th Cir. Jan. 6, 2005); *Boiler Brick & Refractory Co. v. Maryland Cas. Co.*, 210 Va. 50, 52, 168 S.E.2d 100, 102 (Va. 1969) (holding that a policy covering injury and property damage caused by an accident covers tort liability for such injuries, "not damages resulting from assumed or imposed contractual liability"); *Pulte Home Corp.,* 2004 WL 516216 at *5 (Vir. Cir. Ct. Feb. 6, 2004)(unpublished)(holding that defective workmanship cannot constitute an "occurrence" as faulty workmanship by the insured is almost always foreseeable); *RML Corp. v. Assurance Co. of Am.*, No. CH02-127 (Va. Cir. Ct. Dec. 31, 2002), *reprinted in* 17 Mealey's Litig. Rpt.: #11 at 9 (Jan. 21, 2003)(concluding that there was no occurrence where a contractor's liability to repair the building they were contracted to construct arose out of the defective workmanship of a subcontractor).[5]

The Ohio Casualty policy covered Plaintiff for injury or property damage caused by any "occurrence."  "Occurrence" is defined as it was under the One Beacon policy: as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Ex. 37 to Def.'s Mot. for

---

[5] At oral argument, defense counsel stated that the Virginia Supreme Court denied a petition for appeal in *RML Corp. v. Assurance Co. of Am*.

Summ. J. at OC00015.  While "accident" is not defined in the
policy, the Virginia Supreme Court has defined "accident" in
insurance polices as "an event that takes place without one's
foresight or expectation; an undesigned, sudden, and unexpected
event."  *Harris v. Bankers Life & Cas. Co.*, 222 Va. 45, 46, 278
S.E.2d 809, 810 (Va. 1981)(internal quotations omitted).  The
Ohio Casualty policy defined "property damage" as "physical
injury to tangible property, including all resulting loss of use
of that property," or "loss of use of tangible property that is
not physically injured."  Ex. 37 to Def.'s Mot. for Summ. J. at
OC00016-17.  It also excluded from coverage "'property damage' to
'your work' arising out of it or any part of it and included in
the 'products-completed operations hazard.'"  *Id.* at OC00011.
"Your work" is defined as "work or operations performed by [] or
on [the insured's] behalf," including the "materials, parts, or
equipment furnished in connection with such work."  *Id*. at
OC00017.  Finally, there was an exception to the "your work"
exclusion if "the damaged work or the work out of which the
damage arises was performed on [the insured's] behalf by a
subcontractor*."  Id*. at OC00011.

     In this case, Plaintiff's "work" was the construction
of the twenty-four townhouses in the Quince Orchard Park
development.  Plaintiff contracted with Shoffner for the
provision of wood trusses that were used in the construction of
those homes.  As general contractor, Plaintiff was responsible

for fulfilling the terms of its contracts, and Shoffner's faulty workmanship falls on Plaintiff's shoulders.  *See Miller Bldg. Corp.*, 142 Fed. Appx. at 150*, WL 1690552, at *1 (finding general contractor liable for subcontractor's provision of defective materials); *RML Corp.*, No. CH02-127 (Va. Cir. Ct. Dec. 31, 2002), *reprinted in* 17 Mealey's Litig. Rpt.: #11 at 7 (finding general contractor to be responsible for subcontractor's defective workmanship because general contractor was "ultimately responsible for the entire contract").  Because Plaintiff's remediation costs arose out of damage to Plaintiff's own "work" caused by the faulty workmanship of its subcontractor, the property damage was not "unexpected" or an "accident." Therefore, this Court will find that under Virginia law there was no "occurrence" and the Ohio Casualty policy was not triggered.

Plaintiff responds by arguing that nothing in the plain language of the contract excludes accidents or general harmful conditions "arising as a consequence of negligence by a subcontractor or general contractor."  Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 9.  Plaintiff supports this notion by pointing out that the Ohio Casualty policy's "your work" exclusion – and its accompanying subcontractor exception – would be meaningless if construction defect claims against general contractors were automatically excluded.  *Id.* at 10.  But as Defendant notes, Virginia law interprets "occurrence" to include faulty workmanship that results in bodily injury or property damage to

13

property other than the insured's work.  *See Miller Bldg. Corp.*, 142 Fed. Appx. at 149, WL 1690552, at *1; *Boiler Brick*, 210 Va. at 52, 168 S.E.2d at 102.  What Virginia law does not include, however, is defective workmanship resulting in property damage to the insured's work.  Thus, where, as here, there is no "occurrence," the "your work" exclusion and its accompanying subcontractor exception are not triggered, and the exclusion cannot extend or grant coverage where the policy terms do not otherwise do so.  *Nationwide Mut. Ins. Co. v. Wenger*, 222 Va. 263, 267, 278 S.E.2d 874, 876 (Va. 1981).[6]

Plaintiff further argues, however, that even if Defendant's interpretation of Virginia law is correct, there occurred here damage to third-party property other than the insured's work that triggered coverage under the Ohio Casualty policy.  Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 18. Specifically, Plaintiff points to the removal of the homeowners during the remediation process, the contamination of the air inside the homes affected with mold, and bodily injury suffered by some of the homeowners as damage and injury triggering coverage.  *Id.* at 19-21.  As evidence, Plaintiff notes the allegations of bodily injury in the complaint filed against Shoffner, *see* Ex. I to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at

---

[6] Because Virginia law applies to this dispute, Plaintiff's reliance on *French v. Assurance Co. of America*, 448 F.3d 693 (4th Cir. 2006), a decision based on Maryland law, is inapposite.

14

¶¶ 13, 38, as well as the declaration of Matt Cooper, principal of Patuxent, regarding the cost of "moving certain homeowners out of their homes . . . because the HVAC systems needed to be turned off during the remediation of the trusses."  Ex. 34 to Def.'s Mot. for Summ. J. at ¶ 28.

First, regardless of whether removal of homeowners constitutes a "loss of use" falling within the definition of "property damage," the removal was merely a component of the cost of repairing the damage to the townhouses – Plaintiff's own "work."  *See Hotel Roanoke Conference Ctr. Comm'n v. Cincinnati Ins. Co.*, 303 F. Supp. 2d 784, 788 n.5 (W.D.Va. 2004) (finding that liability arising from the temporary closing of a business adjacent to the insured's work was "simply a component of the repair costs," not an "occurrence" triggering coverage).  Thus, the removal was not property damage caused by an "occurrence" triggering coverage.

Second, even assuming that air qualifies as tangible property within the terms of the Ohio Casualty policy, Plaintiff offers scant evidence that its remediation costs went beyond its obligation to repair its defective work.  *See* Quince Orchard Mold Remediation Expenses, Ex. 46 to Def.'s Mot for Summ. J.  The only evidence Plaintiff provides that remediation costs included repairing damage to the air is the statement by Mr. Cooper, which merely indicates that the HVAC systems needed to be turned off.

15

In addition, though homeowners' complaints of bodily injury were mentioned in the complaint against Shoffner, Plaintiff does not argue that their remediation costs included treatment of any allegedly harmed individuals.  While on summary judgment the facts are viewed in the light most favorable to the non-moving party, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Given Plaintiff's scant evidence that it incurred remediation expenses beyond the costs incurred to repair the defective trusses and gypsum board "fire" walls, this Court will grant Defendant's motion for summary judgment.[7]

### C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on the ground that coverage under the One Beacon policy has been exhausted and, based on the terms of the Ohio Casualty policy, Defendant must indemnify Plaintiff for all sums in excess of $1,000,000 that Plaintiff incurred in mold remediation costs for the Quince Orchard Park development.  Because the Court will grant summary judgment for the Defendant, the Court will deny Plaintiff's motion for partial summary judgment.

---

[7] Because the Court will grant summary judgment on Defendant's first ground, it need not reach Defendant's other grounds.

**IV. Conclusion**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for partial summary judgment.

An appropriate Order will issue.


October 2, 2007                    _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                                  UNITED STATES DISTRICT COURT JUDGE